UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LUIS ALONZO AGUILAR and<br>KIM AGUILAR | CIVIL ACTION |
| VERSUS | NO. 07-5652 |
| BOLLINGER SHIPYARDS, INC.<br>and BLESSEY MARINE SERVICE, INC. | SECTION "C"(5) |

## ORDER AND REASONS

Before the Court is Motion for Summary Judgment filed by Blessey Marine Service, Inc. ("Blessey"). (Rec. Doc. 68). The Court having considered the record, the memoranda and arguments of the parties, the law and applicable jurisprudence DENIES the Defendant's motion.

I.  **BACKGROUND**

The instant motion for summary judgment concerns the issue of whether Blessey, as the vessel owner, owed certain duties to the Plaintiff, a ship repairman, and whether those duties, if owed, were breached. On March 30, 2007, Luis Aguilar ("Aguilar") was allegedly struck by an I-beam that was suspended aboard Blessey's vessel, the M/V DREAMA KLAIBER. Aguilar's employer, Karl Senner Inc.("Senner"), was under contract to overhaul the engine gears on the M/V DREAMA KLAIBER, which was owned by Blessey.

In order to fix the engine's gearing system, the newly repaired gears needed to be

lowered into place in the engine's gearbox.  This task was first completed on the boat's port side with the aid of an I-beam that was provided by Bollinger Shipyard Services, Inc ("Bollinger").  The I-beam was then moved to the starboard side of the boat in order to position the remaining engine gears.  It was at this time that the beam was dislodged and allegedly struck Aguilar's back.

## II.     STANDARD OF REVIEW

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001).  When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion."  *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

 The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).  In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory

allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

## III.    LAW AND ANALYSIS

Plaintiffs argue that as a vessel owner, Blessey owed and breached Aguilar the "duty to intervene," and the "active control duty" under 33 U.S.C. § 905 (b). *See Scindia Steam Nav. Co., Ltd.  v. De Los Santos,* 451 U.S. 156, 167 (1981).  Blessey asserts, however, that it did not owe or breach either of these duties and should be dismissed from this suit.

### A. The Duty To Intervene

The *Scandia* Court's "duty to intervene," has been clarified by the Fifth Circuit to impose liability upon a vessel owner if the owner has "actual knowledge both of the hazardous condition and that the stevedore, in the exercise of obviously improvident judgement, intends to continue work in spite of that condition."  *Gay v. Barge*, 915 F.2d 1007, 1012 (5th Cir. 1990).  The Fifth Circuit has held that this duty "is narrow and requires something more than mere shipowner knowledge of a dangerous condition." *Singleton v. Guangzhou Ocean Shipping Co.*, 79 F.3d 26, 28 (5th Cir.1996). "In order for a stevedore's judgment to appear obviously improvident, that expert stevedore must use an object with a defective condition or follow a procedure that is so hazardous that anyone can tell that its continued use creates an unreasonable risk of harm even when the stevedore's expertise is taken into account." *Clay v. Daiichi Shipping*, 74 F. Supp. 2d 665, 673 (E.D. La. 1999).

The Plaintiffs assert that Blessey's port engineer, Ed Jones ("Jones"), made the decision to use the I-beam, and that Jones offered to provide a welder to "tack the I-beam" before the

3

accident, although this offer is contested by the Blessey.  (Rec. Doc. 74-1,  p.32).  Jones asserts that this offer was rejected by Senner's supervisor, Marlon Ferez.. *Id.*  Additionally, as the Defendant readily admit, another Blessey employee, John Weatherall, helped slide the I-beam into the location from which it eventually fell, allegedly injuring Aguilar.  (Rec. Doc. 68-2, p.13)

These facts produce a genuine dispute as to whether 1) Blessey had actual knowledge of the dangerous condition, since Jones procured the I-beam for Senner's crew and Weatherall moved the beam into place, and 2) Blessey had knowledge that Senner's crew was going to continue using the I-beam without "tack welding" it into place, a circumstance which a jury may find to constitute improvident judgement.   Therefore, assuming that Jones made an offer to "tack weld" the I-beam in place, a jury may find that such a circumstance constitutes "improvident judgment" and that Blessey owes a "duty to intervene" to Plaintiffs.

### B. Active Control Duty

The second relevant *Scindia* duty enumerated by the Supreme Court is the "active control" duty.  This duty requires a vessel owner to exercise reasonable care to make the vessel safe if 1) it actively participates in the operations, 2) it maintains control over the area, or 3) such a duty is imposed upon the vessel owner by contract, positive law, or custom.  *See Howlett v. Birkdale Shipping Co.,* 512 U.S. 92, 101 (1994).

Plaintiffs argue that Jones's selection of the equipment for removal of the gears constitutes the requisite control over the operations, citing *Torres v. Johnson Lines*, 932 F.2d. 748, 750 (9th Cir. 1991).  Plaintiffs point to Jones's selection of the beam, instead of a pipe as allegedly suggested by Senner's crew, and the requirement after the incident that the beam be

4

welded into place during lifting operations. (Rec. Doc. 74, p. 9).

In arguing that they did not owe Plaintiff an "active control" duty, Defendant rely on *Clay*, in which Judge Fallon found that the mere proximity of the ship's crew members did not give rise to an active control duty absent an indication that the crew members gave instructions to the workers or actively controlled their work. *See Clay* at 673.

*Clay* is distinguishable for the purposes of summary judgment. In this case, there is a genuine dispute as to whether Jones exercised control over the decisions of the Senner crew. First, Jones was the one who chose the I-beam as the lifting point for the Senner crew to attach their chain falls. Jones additionally required that after the accident, the I-beam must be welded in place before any further lifting took place, a clear indication of control over Senner's operations. Therefore, a genuine dispute exists as to whether Blessey owed an "active control" duty to the Plaintiffs for the purposes of summary judgment. Whether any duty was breached also remains an issue for trial.

Accordingly,

**IT IS ORDERED** that Defendant Blessey's Motion for Summary Judgment is hereby **DENIED**. (Rec. Doc. 68).

New Orleans, Louisiana, this 24th day of November, 2008.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE